UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACS CONSULTANT COMPANY, INC. f/k/a
SUPERIOR CONSULTANT COMPANY, INC.,
a Michigan Corporation,

      Plaintiff,

CASE NO. 06-11301

HON. LAWRENCE P. ZATKOFF

v.

WILLIE WILLIAMS, RYLAND HAMLET, and
RAUL MESTRIL, individuals, and HEALTHCARE
INFORMATICS TECHNICAL STAFFING, LLC.,
a California Limited Liability Company,

      Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on March 5, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on a number of motions: (1) Plaintiff's Motion for Clarification (Docket #8); (2) Defendant Raul Mestril's ("Mestril") Motion to Dismiss and/or Transfer (Docket #13); (3) Plaintiff's Motion for an Order of Contempt of Court Against Defendant Ryland Hamlet ("Hamlet") (Docket #27); (4) a Motion to Withdraw filed by counsel for Mestril (Docket #34); (5) a Motion to Set Aside and Vacate Default Judgment filed by Defendants Willie Williams ("Williams") and Hamlet (Docket #39); and (6) a Motion to Quash Subpoena filed by Williams (Docket #43). The parties have fully briefed, or had the opportunity to fully brief, all of

the foregoing motions, as the time for filing any responses or replies has expired. The Court finds that the facts and legal arguments pertinent to the foregoing motions are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted, without this Court entertaining oral arguments. The Court addresses each motion below.

## II.  BACKGROUND

As set forth in the Court's April 6, 2006, Opinion and Order, Plaintiff provides information technology and management consultant services, principally to health care providers. It has employees residing in at least 48 states and has provided services to clients in all 50 states, as well as internationally. Plaintiff hired Defendant Hamlet as a Senior Management Consultant in November 2004, Defendant Williams as an Executive Director in July 2005 (his title was later changed to Partner) and Defendant Mestril as a Recruiting Manager in October 2005. All three individual defendants worked onsite for one of Plaintiff's clients, Kaiser-Permanente ("Kaiser"), in the Los Angeles, California area.

Each individual defendant executed an Employment Agreement with Plaintiff (or Superior Consulting Co., as Plaintiff was formerly known as), and each Employment Agreement included the following provisions (except that Hamlet's agreement did not include the language of ¶9(c) below):

    8.    Other Gainful Employment: The Employee shall devote full employment energies, abilities and time to the performance of services hereunder. The Employee is prohibited from performing services similar to those offered by ACS on behalf of any other company, organization, individual or other legal entity. The Employee is also prohibited from soliciting or negotiating to perform services similar to those offered by ACS on behalf of any other

company, organization, individual or other legal entity. Further, the Employee must seek written approval of the Company prior to engaging in any employment of any nature similar to the Company's services or otherwise.

9. Non-competition:

   (a) No Recruitment of Company Personnel: In consideration of employment with the Company, the employee is prohibited, during employment and for a period of two (2) years following termination of employment for any reason, from recruiting, on behalf of him or herself, or on behalf of any third party, any employees of the company either directly or indirectly, specifically including, without limitation, identification to a third party (including, without limitation, recruiting agencies, employers and prospective employers) employees of the Company or any of its subsidiaries or affiliates.

   (b) Restrictions on Solicitation of Company Clients: In consideration of employment with the Company, the employee is prohibited, during employment and for a period of six (6) months following termination of employment for any reason, from (1) soliciting business and/or performing services via direct employment or through a party other than the Company, its subsidiaries or affiliates, for clients of the Company or prospective clients of the Company for whom the employee, during the twelve (12) months period immediately preceding termination of employment, was directly involved in the delivery of products or performance of services, or was personally involved in a relationship management role or in sales or marketing efforts; (2) soliciting, individually or on behalf of any person or entity, to perform, or performing services for, or referring to or advising any entity about, an opportunity to perform services for any client or prospective client of ACS where employee learned of the opportunity for that work while employee was employed by ACS.

   (c) No Competitive Business Involvement: In consideration of employment with the Company, the Employee is prohibited, during employment and for a period of six (6) months following termination of employment from engaging in healthcare information systems consulting, management consulting or other businesses competitive with the Company.

   (d) The non-competition provisions contained herein shall survive termination of employment.

11. Confidential Information: The Employee recognizes that in the course of performance of work for the Company the Employee will obtain access to materials and information of the Company, its subsidiaries and affiliates that constitute trade secrets and proprietary information of the Company, its subsidiaries and affiliates including, without limitation, descriptions of the Company's, its subsidiaries' and affiliates' products and services, planned products and services, business and marketing/sales plans, mergers and acquisition targets, employee compensation plans, employee medical information, the identities of suppliers, customers and prospective customers, identities of employees and prospective employees, prices and pricing policies in whatever form received by employee, including without limitation, written, voice, electronic or magnetic media or graphic display.

    The Employee shall not utilize any such information for any purpose other than the performance of this Employment Agreement and shall not disclose any such information to any third party. The Employee shall, upon request by the Company, return or destroy, as directed by the Company, any media in which such information is recorded. The Employee shall also observe any restrictions with respect to the use and disclosure of the confidential information of the Company's clients that are specified in the Company's service agreements with the clients, or that are reasonably required by the clients.

    The Employee understands that his/her obligation of non-disclosure shall survive termination of employment for any reason whatsoever.

14. Termination of Employment: In the event employment with the Company is terminated by either the Employee or the Company, the Employee agrees to return all materials acquired during the term of employment with the Company. Specifically, this is to include without limitation, computer disks, computers, work papers, manuals, training manuals, notes, articles, phone lists, correspondence, proposals, addresses, reports, phone cards, office keys and any and all material related to employment with the Company.

18. Choice of Law and Forum: This Employment Agreement will be governed by and interpreted in accordance with the laws of the State of Michigan. Any action arising out of this Agreement or the termination of this Agreement, or the performance of services under this agreement, or the relationship of the parties established herein, shall be brought only in the Oakland County Circuit Court, Michigan, or United States District Court for the Eastern District of Michigan, Southern Division, at Detroit, Michigan, and Employee hereby consents to and submits to the jurisdiction of either of such courts for such purpose.

On November 7, 2005, Plaintiff entered into a Subcontractor Master Agreement (the ACS/HCI Contract") with Defendant Healthcare Informatics Technical Staffing, LLC ("HCI") , a technical staffing company based in California that allegedly acts as a recruiting agency for healthcare facilities and consultants such as Plaintiff. Noelle Dayola executed the ACS/HCI Contract on behalf of HCI. Ms. Dayola allegedly is the wife of Hamlet and Hamlet is the principal of HCI. Neither of these two things were disclosed to Plaintiff at the time the ACS/HCI Contract was executed. Plaintiff never issued any work orders to HCI, though HCI held itself out as a preferred vendor of the Plaintiff.

On March 8, 2006, after an investigation of alleged misconduct and wrongful activities by Williams, Mestril and Hamlet, Plaintiff's executives met with Williams and terminated his employment. He was asked to return Plaintiff's materials, but he initially failed to do so (a company issued Blackberry was not returned, among other things). The same day, Plaintiff's executives met with Mestril and encountered the same difficulties in getting Plaintiff's materials returned. Mestril took the Plaintiff's executives to his apartment to get the company-issued laptop but claimed it was gone from where he had left it. The Plaintiff's executives were unable to terminate Hamlet in person because he left the offices before they could do so. He was terminated via express mail and email over the next two days.

On March 29, 2006, Plaintiff filed an 11 count Verified Complaint for Injunctive and Other Relief and a Motion for Temporary Restraining Order and Preliminary Injunction. On March 30, 2006, the Court issued a Temporary Restraining Order and set a preliminary injunction hearing for April 4, 2006, at 10:00 a.m. On March 29, 2006, Plaintiff sent copies of the pleadings, motion and brief, and TRO by confirmed overnight delivery and as e-mail attachments to Williams, Hamlet and

Mestril at their home e-mail addresses on file with Plaintiff. In addition, Plaintiff made arrangements for personal service of the same documents on Defendants.

According to Mestril's counsel, on or about March 31, 2006, Williams and Hamlet had a conference call with Mestril discussing Plaintiff's lawsuit against the three of them. Williams and Hamlet indicated to Mestril that they had spoken with the best attorney in California who told them they had an excellent discrimination case. That attorney would defend Williams, Hamlet and Mestril for a fee, and Williams and Hamlet wanted Mestril to pay one third of the fee. Mestril instead obtained a Florida attorney, Robert I. Barrar ("Barrar"), on March 31, 2006. Both Mestril and Barrar attended the April 4, 2006, hearing.

Neither Williams, who was personally served on April 1, 2006, nor Hamlet, who was personally served on April 19, 2006, responded to the lawsuit. They eventually filed their Motion to Set Aside Default Judgment on August 16, 2006. Within days, Williams and Hamlet filed a civil rights lawsuit in this district, Case No. 06-13603, and that case was reassigned to this Court as a companion case. In their civil rights lawsuit, Williams and Hamlet claim that Plaintiff discriminated and retaliated against them, terminating them on the basis of their race.

### III.  SUBJECT MATTER JURISDICTION

Plaintiff has alleged, and no party has disputed, that this Court has subject matter jurisdiction based upon 28 U.S.C. §1332. Plaintiff is a Michigan corporation, Williams is a citizen of the State of California, Hamlet is a citizen of the State of California, Mestril is a citizen of the State of Florida, and HCI is a California Limited Liability Company. The amount in controversy clearly exceeds $75,000.

6

## IV.  ANALYSIS

**A.     Motion to Set Aside Default**

The Court first notes that default judgment has not yet been entered in this case, but there has been a clerk's entry of default.  In deciding whether to set aside an entry of default under F. R. Civ. P. 55 "for good cause shown," the Court considers the following three factors established by the Sixth Circuit: (1) whether the defendant's culpable conduct has led to the default; (2) whether the defendant has a meritorious defense; and (3) whether the plaintiff will be prejudiced. *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).  In this case, the Court finds that Williams and Hamlet have not met the burden required to set aside the  default.

Defendants argue that relief may be granted on the showing of mistake by a party or attorney. Such mistake may be one of fact or law, but in either case it must relate to defendants' duty to respond to the complaint, rather than to the merits of plaintiff's claim or other collateral matter. *Kingvision Pay-Per-View Ltd. vs. Lake Alice Bar,* 168 F. 3d 347, 350 (9th Cir. 1999) . If the default judgment is obtained because of a mistaken understanding of the fact concerning the duty to respond, relief also may be granted. *999 v. Cox & Co.,* 574 F.Supp. 1026, 1029 (D. Mo. 1983). Defendants also cite a number of examples where the entry of default has been vacated because the moving party has shown a reasonable excuse for the default. *See, e.g., Meadows vs. Dominican Republic,* 817 F. 2d 517, 520  (9th Cir. 1987).

Defendants further argue that failure to respond to a lawsuit of which the defaulting party has actual knowledge may or may not be "culpable" conduct. Such failure is not "culpable" where defendant offers "a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process."

*TCI Group Life Ins. Plan vs. Knoebber,* 244 F. 3d 691, 697 (9th Cir. 2001).  Defendants suggest that the declarations of Leo James Terrell ("Terrell"), California counsel for Williams and Hamlet, Williams and Hamlet provide this Court with sufficient facts to indicate that the Defendants have good cause to set aside the default and default judgments.

Upon an initial review of the Motion to Set Aside Default Judgment, the Court was not persuaded that Williams and Hamlet had met the requirements delineated in *United Coin Meter, supra*.  Williams' and Hamlet's excuses for not responding to the Verified Complaint (*i.e.*, that they were *in propria persona* and could not find a Michigan lawyer to represent them) fail to pass muster here. Both Williams and Hamlet were highly paid supervisory employees of ACS. They had notice through the Summons that (1) they were being sued, (2) they had 20 days in which to respond, and (3) a default could be entered against them if they did not respond. Their obligations could not have been clearer. They could have consulted California counsel regarding consequences for not responding, yet they maintain that they waited two months before securing counsel.  As they are sophisticated business persons, their neglect is not excusable under these circumstances.  Moreover, Williams and Hamlet have treated with contempt, ignored and disobeyed this Court's injunctive Orders for months, despite personal service of those orders upon them shortly after their issuance. The Court also finds that the second factor in *United Coin Meter, supra,* has not been satisfied. Defendants responses failed to include any meritorious defense. In fact, they don't include a defense at all.

More significantly, the declarations of Terrell, Williams and Hamlet in support of the Motion to Set Aside Default Judgment contradict the declarations of Terrell and Williams with respect to Williams' Motion to Quash Subpoena, discussed *infra*.  In the declarations in support of the Motion

to Set Aside Default Judgment, Terrell, Williams and Hamlet assert that Terrell was retained on June 28, 2006, and that Williams and Hamlet had "no knowledge of the law, much less any knowledge of the legal process and procedures within the Eastern District of Michigan" when served in April 2006. In the declarations submitted by Terrell and Williams in support of the Motion to Quash Subpoena, however, they both state that e-mails sent and received from Williams' Yahoo account for the time period of June 2005 through April 2006 included privileged attorney-client communications with, and attorney work product of, Terrell. As such, the declarations in support of the Motion to Quash Subpoena are consistent with the alleged comments of Mestril's attorney that Williams and Hamlet had contacted Mestril about joint representation by "the best attorney in California" as early as March 31, 2006. March 31, 2006, of course, was prior to the preliminary injunction hearing (and the resulting Opinion and Order that was issued by this Court), as well as six weeks prior to the entry of default in this matter.

As such, the Court finds that, in a light most favorable to Terrell, Williams and Hamlet, the declarations of those three men with respect to the Motion to Set Aside Default Judgment were disingenuous. The Court further finds that there was no "neglect, mistake, inadvertence, surprise" of Williams and/or Hamlet with respect to this matter. Finally, the Court concludes that Williams and Hamlet have not made any showing of good cause to set aside the entry of default. Accordingly, the Motion to Set Aside Default Judgment filed by Williams and Hamlet is DENIED.

**B.     Motion to Dismiss**

   *1.     Personal Jurisdiction*

Although Mestril acknowledges that subject matter jurisdiction is appropriate here, Mestril

asserts that this Court does not have personal jurisdiction over him, as he has not purposefully availed himself of the forum state (Michigan). Mestril asserts that he did not purposely avail himself of the forum state herein, as (1) the contract between Mestril and Plaintiff was signed in Miami, Florida, (2) Mestril worked in California, (3) the causes of action at bar arose from Mestril's alleged activities in California, and (4) Mestril was only in Michigan on one occasion for a couple of days in his life, and that was for employment purposes on behalf of the Plaintiff.

In order for personal jurisdiction to be proper, the Court must determine whether (a) the forum state's long arm statute authorizes jurisdiction, and (b) the exercise of personal jurisdiction is consistent with constitutional requirements of due process. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996). *See also Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002) (plaintiff must present a prima facie case such that the court's exercise of personal jurisdiction will not offend due process). Since the Michigan long arm statute provides for personal jurisdiction to the full extent of due process, the two inquiries merge. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992). The constitutional inquiry is "whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *CompuServe,* 89 F.3d at 1263 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In making the due process inquiry, the Court applies the following three criteria:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant

10

reasonable.

*CompuServe*, 89 F.3d at 1263 (quoting *Reynolds v. International Amateur Athletic Fed.*, 23 F.3d 1110, 1116 (6th Cir. 1994)). Where there is no evidentiary hearing on personal jurisdiction, the plaintiff must present a prima facie case of personal jurisdiction using the above three criteria.

The Court finds that Plaintiff has presented the Court with a prima facie case of personal jurisdiction over Mestril. With respect to the first *CompuServe* criterion, the Court finds that Mestril has purposefully availed himself of the privilege of doing business in Michigan through his contacts with Plaintiff in Michigan, both physical and electronic. For example, Mestril

> (1) Traveled to Michigan for training and to meet Plaintiff personnel and become familiar with Plaintiff corporate culture;
> (2) On a regular basis, utilized Plaintiff's e-mail system and accessed Plaintiff's proprietary software, both of which are maintained on Plaintiff's servers located in Michigan;
> (3) Participated regularly in telephone conference calls with Plaintiff's executives in Michigan as part of his employment with Plaintiff;
> (4) E-mailed reports to Plaintiff in Michigan; and
> (5) Accessed the Plaintiff system in Michigan for many purposes, including to misappropriate Plaintiff's trade secrets, to raid its valuable skills database, and to thwart its recruiting.

In fact, Mestril's electronic activities directed toward Plaintiff's servers in Michigan were similar to those of a defendant in an earlier trade secret case involving Plaintiff where the court found personal jurisdiction over the employee defendant. *See Superior Consulting Co. v. Walling*, 851 F. Supp 839 (E.D. Mich. 1994). Although Mestril suggests otherwise, the Court does not have to find that he was physically present in Michigan in order to fulfill the purposeful availment requirement. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *CompuServe, supra* (wherein the Sixth Circuit upheld the trial court's finding of personal jurisdiction even though the defendant never set foot in Ohio, the forum state).

The Court also finds that Plaintiff has satisfied the second *CompuServe* criterion, as the cause of action arose, at least in part, in Michigan. As a result of Mestril's activities using Plaintiff's servers in breach of his employment agreement, Plaintiff lost proprietary information and trade secret data stored on Plaintiff's servers in Michigan. This loss of proprietary trade secret information and consequential damages originated in Michigan.

Finally, there is an inference that the third *CompuServe* criterion is met if the Court finds the first two elements of a prima facie case of personal jurisdiction. *CompuServe,* 89 F.3d at 1269 (citations omitted). Even without the inference, Mestril's contacts with Michigan were substantial enough to make this Court's exercise of jurisdiction over him reasonable, as discussed above. Mestril, using his laptop on an unauthorized basis and outside the scope of his employment, accessed Plaintiff's proprietary information and trade secrets from Plaintiff's password protected databases located on Plaintiff servers in Michigan. Mestril also used Plaintiff' e-mail system to convey Plaintiff's proprietary information and trade secrets away from Plaintiff's Michigan servers (i) in direct competition with Plaintiff, (ii) to thwart Plaintiff' recruiting, and (iii) for Mestril's own gain, all in breach of his employment agreement and in violation of the Michigan Uniform Trade Secrets Act, MCL § 445.1901, et. seq. ("MUTSA").  Plaintiff's loss of proprietary information and trade secrets from its servers in Michigan, and therefore its cause of action against Mestril, necessarily arose in Michigan as a result of Mestril's continuous unlawful electronic activities in Michigan.  In addition, the Court finds significant the fact that Mestril signed an employment agreement in which he expressly agreed, in Paragraph 18 of his Employment Agreement with Plaintiff, to the jurisdiction and venue of the state and federal courts of Michigan.

For the foregoing reasons, the Court denies Mestril's Motion to Dismiss on the basis of the

12

Court's lack of personal jurisdiction over him.

  *2.*  *Venue*

  Mestril next contends that the Court should transfer this proceeding to "the United States District Court in California." In support of his contention, Mestril relies on 28 U.S.C. §1404, which provides that, for the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. A court may transfer the case when the following three requirements are met: (a) the plaintiff could have brought the action in the transferee court; (b) a transfer would serve the interests of justice; and (c) a transfer would be in the convenience of the witnesses and parties. *Kepler v ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). In determining whether to transfer a case, the Court may consider the following factors:

  1.  convenience of witnesses;
  2.  location of relevant documents and relative ease of access to sources of proof;
  3.  convenience of the parties;
  4.  locus of operative facts;
  5.  availability of process to compel attendance of unwilling witnesses;
  6.  relative means of the parties;
  7.  forum's familiarity with the governing law;
  8.  weight accorded to the plaintiff's choice of forum; and
  9.  trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F.Supp.2d 809, 811 (E.D. Mich. 2000). The Court also may consider whether the parties agreed to an enforceable forum selection clause. *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988).

  Mestril argues that (i) all Defendants other than him reside in California, (ii) all of the acts committed by each and every Defendant, as alleged by the Plaintiff to be in violation of their respective employment agreements were committed in California, (iii) all witnesses to the acts

13

alleged by the Plaintiff to be in violation of the Defendants' respective employment agreements were committed by them in California, and (iv) at the hearing on the preliminary injunction, witnesses from California testified on behalf of the Plaintiff as to the acts allegedly committed by the Defendants. Mestril therefore argues that all of the alleged acts committed by the Defendants in violation of their employment agreements were in fact committed in California.

Although Mestril raises some valid arguments, the Court believes that, in exercising its discretion to best serve the interests of justice, this case should and shall be heard in this district. First, and most significantly, Plaintiff chose this venue, both in the Employment Agreement and in filing its action. Mestril agreed to this venue when he signed the Employment Agreement. Second, this Court is well versed in the Michigan law to be applied in this case and a court in California would not be. Third, as Plaintiff notes, the electronic records (and Plaintiff's servers) are here in Michigan. Fourth, Plaintiff did not have any trouble getting witnesses here from California to testify at the preliminary injunction hearing. Fifth, this forum is clearly more convenient for the Plaintiff and, frankly, appears to be more convenient for Mestril, who lives in Florida. The Court notes that neither Williams nor Hamlet has filed any document objecting to the Eastern District of Michigan as the appropriate forum.

For the foregoing reasons, the Court denies Mestril's Motion to Transfer this case to "the United States District Court in California."

**C.     Motion to Withdraw**

Subsequent to filing the foregoing Motion to Dismiss and/or Transfer, counsel for Mestril, Mr. Barrar, filed a Motion to Withdraw, citing irreconcilable differences that have arisen between

14

he and Mestril. In support of the Motion to Withdraw, Mr. Barrar attached a letter he had received from Mestril. Mestril specifically advised Mr. Barrar that Mestril no longer wants Mr. Barrar or his firm to continue to representation him on this matter. Pursuant to Section 1.16(a)(3) of the Michigan Rules of Professional Conduct, a lawyer must move to withdraw from the representation of a client if the client desires to discharge the lawyer.

Plaintiff objects to the Motion to Withdraw because this matter is in an active state and Plaintiff will be prejudiced if it is granted. Plaintiff suggests that it would be prejudiced if the Court grants the Motion to Withdraw and Mestril proceeds *in pro per* because the Fed.R.Civ.P. 26 Discovery Conference will be critical to moving the case forward. For example, Plaintiff asserts there will be a number of Plaintiff documents to be disclosed following the Rule 26 Discovery Conference that must be marked "for attorney eyes only" in order to protect the trade secrets and proprietary information of Plaintiff. If Mestril proceeds without counsel, Plaintiff contends it will have no choice but to withhold such documents. In addition, Plaintiff asserts that it must take the deposition of Mestril as soon as possible in order to fully prosecute its claims against the Defendants. As such, Plaintiff believes it will be handicapped in its ability to resolve this matter with respect to Mestril. Finally, Plaintiff asserts that Section 1.16(c) of the Michigan Rules of Professional Responsibility requires a lawyer to continue representation of his client when ordered to do so by a tribunal, even if there is good cause for terminating the representation.

The Court understands that Mestril may not wish to have Mr. Barrar continue as his counsel in this matter. As this is a complex matter, both substantively and procedurally, however, the Court believes that Mestril shall require competent legal representation at all stages of this proceeding. Significantly, Mestril will need counsel to prepare for, and attend, a scheduling conference to be

15

conducted in the near future. For those reasons, the Court denies without prejudice the Motion to Withdraw. If Mestril still desires to terminate the representation by Mr. Barrar, however, the Court will sign a stipulated substitution of counsel if Mestril obtains new counsel in the next 30 days.

**D.     Motion for Order of Contempt of Court Against Hamlet**

In filing its Motion for Order of Contempt of Court against Hamlet, Plaintiff asserted that Hamlet had failed to return an ACS-issued laptop to the Plaintiff, as ordered by this Court in the Opinion and Order granting preliminary injunction against him. Plaintiff therefore asked the Court to find that Hamlet was in contempt of Court and subject him to sanctions for failing to comply with the Court's orders. Plaintiff qualified its request for sanctions by stating that it would be willing to forfeit any paid sanctions back to Hamlet once he provided the laptop to Plaintiff (*i.e.*, Plaintiff's concern was to get the laptop back, not to impose significant financial penalties upon Hamlet). Although Hamlet never filed a response to the Motion for Order of Contempt, the Court understands from subsequent filings that the laptop at issue has been returned to Plaintiff. As such, the substance of Plaintiff's motion, *i.e.*, the request that this Court order Hamlet to return the laptop and impose sanctions against Hamlet, is denied as moot.

Plaintiff also asked the Court to award Plaintiff costs and attorneys' fees expended in bring the Motion for Order of Contempt. As noted above, Hamlet has never responded to this Motion in any manner and eventually gave the laptop back to Plaintiff. As such, the Court concludes that Plaintiff's Motion was filed in good faith and for good reason. Therefore, the Court grants Plaintiff's Motion as it pertains to Plaintiff's request for an award of costs and attorneys' fees expended in bring the Motion. The Court therefore ORDERS Plaintiff to submit to the Court, within 20 days of the date of this Opinion and Order, an itemized list of billings associated with

16

preparing and filing the Motion for Order of Contempt.

**E.     Motion to Quash Subpoena**

Plaintiff obtained a "Subpoena in a Civil Case" from the U.S. District Court of California, Northern District, that directed YAHOO! Inc. to produce "Any and all E-mails of Willie Williams sent or received between June, 2005 through April, 2006. Willie Williams used Yahoo account - williewill2004@yahoo.com." Williams seeks to quash the subpoena because the documents sought: (1) are not relevant to this case, (2) are not calculated to lead to admissible evidence, (3) are overbroad in time frame and scope, (4) assume facts not in evidence, (5) violate the rights of privacy of Defendant and third persons not a party to this action, (6) violate attorney-client privilege, and (7) violate attorney work product privilege.

In response, Plaintiff asserts that it did not know that Williams was consulting Terrell, his attorney, as early as April 2006. In addition, Plaintiff sent Williams a letter dated September 18, 2006, in which Plaintiff offered to limit the scope of the Yahoo subpoena to communications to and from certain individuals and to preclude any e-mails between Williams and Terrell. Williams did not file a reply brief, nor is the Court aware of what response Williams made, if any, to Plaintiff's proposal.

In reviewing the scope of the subpoena obtained by the Plaintiff, the Court finds that some of Williams concerns are warranted, in particular the concerns about (a) the privacy of third persons and Defendant, and (b) the attorney-client privilege and attorney work product. The Court also finds, however, that the Plaintiff's proposed limitations and modifications to the scope of the subpoena alleviate those concerns. The Court further finds that a subpoena limited in scope to the e-mail addresses and search terms listed in Plaintiff's letter would be reasonable. For the foregoing

17

reasons, the Court (1) quashes the subpoena that is the source of Williams' motion, but (2) concludes that Plaintiff may obtain a new subpoena that is limited in scope to the terms and parameters set forth in its letter. Accordingly, Williams' Motion to Quash Subpoena is granted.

**F.     Plaintiff's Motion for Clarification**

After the Court entered its Opinion and Order granting the Plaintiff's request for preliminary injunction, Plaintiff filed a Motion for Clarification. Plaintiff notes that the Court found that "the terms of defendants' Employment Agreements are reasonable" and that "the restriction of former employees from soliciting company employees and clients is a legitimate business interest." The Court thereafter enjoined Williams and Hamlet "[f]rom interfering in any way with any current contract or prospective client relationship of" Plaintiff and from "breaching any fiduciary obligation to" Plaintiff. The Opinion and Order does not explicitly enjoin Williams and Hamlet from, directly or indirectly, recruiting any employees of Plaintiff on behalf of themselves or any third party or from identifying Plaintiff employees to a third party.

The Court has reviewed the record in this case, including the documents submitted by Plaintiff in seeking the preliminary injunction. The reason the Court did not explicitly enjoin Williams and Hamlet from, directly or indirectly, recruiting any employees of Plaintiff was that *Plaintiff did not ask the Court for that relief.* In reviewing the relief requested and the relief granted, the Court notes that the relief granted by the Court tracks the relief requested by Plaintiff, except for the exclusion of Hamlet from restrictions related to Paragraph 9(c).[1] As the Court has already held a hearing on this matter and a clerk's entry of default has been entered, the Court is not going to

---

[1] This is not to say that the relief granted by the Court under the Opinion and Order does not cover the clarification Plaintiff seeks. The Court notes that the Opinion and Order prohibits each of Williams and Hamlet from "breaching any fiduciary obligation to" Plaintiff.

reopen this matter by amending its Opinion and Order to specifically include relief that was not requested at the time of the hearing. Accordingly, Plaintiff's Motion for Clarification is denied.

## V. CONCLUSION

Accordingly, and for the reasons above,

(1) Plaintiff's Motion for Clarification is DENIED;

(2) Mestril's Motion to Dismiss and/or Transfer is DENIED;

(3) Plantiff's Motion for an Order of Contempt of Court Against Defendant Ryland Hamlet is GRANTED IN PART and DENIED IN PART;

(4) The Motion to Withdraw filed by counsel for Defendant Raul Mestril is DENIED WITHOUT PREJUDICE;

(5) The Motion to Set Aside and Vacate Default Judgment filed by Defendants Williams and Hamlet is DENIED; and

(6) The Motion to Quash Subpoena filed by Williams is GRANTED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: March 5, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 5, 2007.

s/Marie E. Verlinde
Case Manager
(810) 984-3290